# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cowboy Logic, LLC d/b/a   :
Home Instead Northampton,   :
     Petitioner  :
          :
   v.     : No. 151 C.D. 2024
          :
Unemployment Compensation  :
Board of Review,     :
    Respondent : Submitted: March 4, 2025


BEFORE: HONORABLE ANNE E. COVEY, Judge
     HONORABLE LORI A. DUMAS, Judge
     HONORABLE MATTHEW S. WOLF, Judge


## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF         FILED: April 2, 2025


  Cowboy Logic, LLC, doing business as Home Instead Northampton, (Employer) petitions this Court for review of the January 25, 2024 Order of the Unemployment Compensation Board of Review (Board), which reversed a decision by a Referee denying unemployment compensation (UC) benefits to Samantha Smith (Claimant). Employer argues that the record, when properly examined, demonstrates Claimant's ineligibility for UC benefits due to willful misconduct pursuant to Section 402(e) of the Unemployment Compensation Law (UC Law),[1] and that the Board committed legal error by reaching a contrary conclusion. Because

---

[1] Act of December 15, 1926, 2nd ex. sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(e).

the conclusion that the Board reached is supported by substantial evidence, however, we affirm.

## I. Background

Employer acknowledges that there are "few, if any" facts in dispute in this matter. Employer's Br. at 6. From February 1, 2022, to March 20, 2022, Claimant worked for Employer, an in-home senior care provider, full-time as a client care coordinator. Certified Record (C.R.), Item No. 13, Board Decision and Order, Finding of Fact (F.F.) No. 1. Claimant had previously served in the same position since January 2020, when the business was under different ownership. *Id.*, F.F. No. 2.

On the morning of Friday, March 18, 2022, Employer's co-owner and sales recruiter, Jennifer Soria, sent an e-mail message to Claimant in which she stated: "There was a lead that came in yesterday on Salesforce [Employer's client management software]. It appeared that it had not been assigned or contacted so I assigned it to you." C.R., Item No. 9, Employer's Ex. No. 1. In a reply sent that afternoon, Claimant stated:

> Regarding leads that come into [Salesforce], can I ask kindly that you do not assign to anyone. Most of the time people put the lead under the wrong person and once it is converted officially to a lead it is strictly to make sure all of it is correct. I have actually called IT twice now this week regarding that same kind of issue. Once it is assigned to a member then no one else would see that there was an 'open lead.' If I cannot get to a lead right away and I asked Cassidy if she could reach out for me she will. It works perfectly.

*Id.*, Employer's Ex. No. 6. The record does not include a reply by Ms. Soria to that message.

2

On the afternoon of the following Sunday, March 20, 2022, Ms. Soria wrote a new message to Claimant and another employee regarding a new client. *Id.*, Employer's Ex. No. 2. Therein, Ms. Soria stated that she decided to reach out to the new client directly since Claimant and the other employee were off work that day, and requested that Claimant send the new client the necessary onboarding paperwork when she returned to work on the following Monday. *Id.* In spite of that instruction, Claimant—who received an e-mail notification while driving out-of-state—sent the following reply to Ms. Soria and the other employee seven minutes later: "I guess what I said the other day didn't mean anything. I was literally calling her now." *Id.*, Employer's Ex. No. 3; *see also* Board Decision and Order, F.F. No. 5. Ms. Soria replied that she was unaware of Claimant returning calls on weekends. *Id.*, Employer's Ex. No. 4. Minutes later, Claimant sent the following reply to Ms. Soria and two other employees:

> So last weekend a few leads came in[,] plus somebody called Saturday night regarding care for her father. I CALLED EVERYONE! Plus [I] set up the [onboarding paperwork] for two of the leads over the weekend. I'm not sure how much clearer I could have made the e[-]mail Friday regarding just leaving [Salesforce] leads ALONE!

*Id.*, Employer's Ex. No. 5 (emphasis in original). In response, Ms. Soria wrote (with copies sent to the other two employees): "You do know that you are writing the **owner** of this company! I will talk to you personally regarding this e[-]mail tomorrow." *Id.*, Employer's Ex. No. 7 (emphasis in original). Claimant's reply is as follows:

> Jen, I'm not sure how you don't know that I work on weekends when leads come in. You sending a text asking if I was going to reach out to the lead for today would have been way more appropriate. Instead, you just went ahead and reached out and didn't say anything to anyone. Except now that I've reached out to do this. I'm mad, and I think I have

3

every right to be mad. I didn't think on Friday I had to write in that email please leave all [Salesforce] leads alone. I just left it with what I stated.

*Id.*, Employer's Ex. No. 8.

On the following Monday, March 21, 2022, Employer terminated Claimant's employment. Board Decision and Order, F.F. No. 13. Claimant applied to the Department of Labor and Industry (Department) for UC benefits on April 1, 2022. C.R., Item No. 1. Employer responded with a Request for Relief from Charges, submitted three days later, in which it asserted that Claimant "was terminated from employment here . . . after a very rude and out[-]of[-]line e[-]mail chain." O.R., Item No. 2. The Department's service center notified Claimant in a July 21, 2022 Disqualifying Separation Determination that it found her to be ineligible for UC benefits due to "improper conduct toward a supervisor." C.R., Item No. 4. Claimant appealed. *See* C.R., Item No. 5.

The Referee held a hearing on the matter on September 19, 2022, at which Employer's co-owner, Matthew Soria, and Claimant both testified. O.R., Item No. 9. In his testimony, Mr. Soria confirmed that the March 20, 2022 e-mail exchange between Claimant, Ms. Soria, and the other employees was the reason for the termination. *Id.*, Hr'g Tr. at 7. Mr. Soria explained that he found Claimant's conduct in the course of that exchange unacceptable because of her insistence on escalating the situation and because of her inclusion of the other employees in her criticism of Ms. Soria. *Id.* at 7-8. Thus, upon Claimant's arrival at the office on the following morning, he and Ms. Soria elected to have a "final discussion" about the impropriety of Claimant's conduct, and instructed her to leave with her belongings. *Id.* at 8-9.

Pressed by the Referee for clarification on the grounds for Claimant's dismissal, Mr. Soria reiterated that it was the "tone" of her e-mail messages, which, in Mr. Soria's opinion, "overwhelmingly" crossed normal bounds of acceptable

4

employee behavior. *Id.* at 9. Asked if the e-mail messages violated any workplace policies then in place, Mr. Soria acknowledged that they did not. *Id.* at 9. Mr. Soria then indicated that there were other actions by Claimant that led to her dismissal. *Id.* Asked by the Referee to name "specific instances," Mr. Soria referred to the overall productivity of the business, opining that its finances were in dismal shape before his and Ms. Soria's takeover. *Id.* When the Referee asked again for specific instances of misconduct by Claimant, Mr. Soria referred vaguely to an occasional tendency to reschedule or depart early from meetings with staff or clients. *Id.* at 10. Nonetheless, when the Referee asked again if there was "anything else" that the Referee should know about to understand the circumstances of her dismissal, Mr. Soria responded: "I only got the e[-]mail." *Id.* at 11.

In a September 20, 2022 Order, the Referee affirmed the service center's Disqualifying Separation Determination and found Claimant ineligible for benefits. C.R., Item No. 10. In the accompanying Decision, the Referee credited Employer's evidence and testimony "that [] Claimant's e[-]mail communications were in disregard of standards of behavior [that] an employer has a right to expect of an employee." *Id.*, Reasoning. Claimant appealed to the Board, alleging that Mr. and Ms. Soria had failed to communicate their criticisms of her work performance during her employment. C.R., Item No. 11.

In its January 25, 2024 Order, the Board reversed the Referee's Decision and found Claimant not ineligible for UC benefits. C.R., Item No. 13, Board Op., Order. The Board explained that an "employee's insubordinate, abusive, or offensive language may constitute willful misconduct in disregard of a reasonably expected standard of behavior," but that "[m]erely curt remarks do not disqualify an employee, if reasonable under the circumstances." *Id.*, Discussion. While

5

acknowledging that Claimant's e-mail messages were "rude," the Board found that she was "frustrated with the [co-]owner [for] not following instructions [Claimant] provided" regarding sales leads. *Id*. Claimant's language was "not insubordinate," the Board reasoned, but merely a means of "voic[ing] her displeasure about the [owners'] actions." *Id*. "Thus," the Board concluded, "while [Employer] had the right to terminate the claimant's employment, her actions do not rise to the level of willful misconduct." *Id*. This appeal followed.[2]

## II. Discussion

At the outset, we note that the Board's factual findings "are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." *Gosner v. Unemployment Comp. Bd. of Review*, 234 A.3d 934, 937 (Pa. Cmwlth. 2020). In other words, its findings must be supported by such relevant evidence that a reasonable mind would accept as adequate to support a conclusion. *Id*. This Court is bound "to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony to determine if substantial evidence exists for the Board's findings." *US Banknote Co. v. Unemployment Comp. Bd. of Review*, 575 A.2d 673, 674 (Pa. Cmwlth. 1990) (cleaned up).

Instantly, Employer maintains on appeal that Claimant committed willful misconduct pursuant to Section 402(e) of the UC Law, 43 P.S. § 802(e). While the

---

[2] This Court's review of a Board decision is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. *Miller v. Unemployment Comp. Bd. of Rev*., 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014).

UC Law does not define the term, this Court has characterized willful misconduct as:

> (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of an employer's rules; (3) disregard of the standards of behavior that an employer can rightfully expect from an employee; or (4) negligence showing an intentional disregard of the employer's interest or the employee's duties and obligations.

*Zimmerman v. Unemployment Comp. Bd. of Review*, 236 A.3d 151, 159 (Pa. Cmwlth. 2020). An employee's use of abusive, vulgar, or offensive language with a superior is a form of insubordination that may constitute willful misconduct, even if the employer has not adopted a specific work rule prohibiting such language. *Brown v. Unemployment Comp. Bd. of Review*, 49 A.3d 933, 937 (Pa. 2012). The language used must be examined to determine whether it is, in modern parlance, abusive, vulgar, or offensive. *Id.* In addition, where the use of the proscribed language is provoked or is *de minimis* in nature, willful misconduct is not proven. *Id.*

Employer does not identify which language in the March 20, 2022 e-mail exchange it considers abusive, vulgar, or offensive. However, Employer maintains that Claimant's conduct fell "below the standard that [Employer] has a right to expect," and that Claimant thereby "engaged in willful misconduct." Employer's Br. at 13. In support, Employer points to this Court's holding in *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 522 (Pa. Cmwlth. 1999) that an employer need not establish that an employee "swore," made "offensive comments," or engaged in "extreme conduct in order to establish that [the employee] acted in a disrespectful manner toward his supervisor." Employer argues that Claimant's conduct on March 20, 2022 meets the standard contemplated in

7

*Guthrie* because Ms. Soria's "authority had to be respected when [she] gave a reasonable direction to [] Claimant to follow up with the sales lead on the next workday." Employer's Br. at 14. Rather than accept that authority, Employer explains, Claimant "immediately became angry and sent rude and dictatorial e[-]mails berating" Ms. Soria for not following Claimant's directions. *Id.* Employer also challenges the assertion that Claimant's language was in any way justified by her frustration with Ms. Soria's handling of the sales lead, arguing that it is not "reasonable for an employee who is neither managerial nor supervisory to expect her employer . . . to follow the employee's unclear direction as to how to respond to sales leads, rather than follow her own instincts and get on the sales lead as soon as it came in[.]" *Id.* at 22.

We disagree with Employer that the language of Claimant's March 20, 2022 e-mails falls within our definition of willful misconduct. *Guthrie* is distinguishable in that the employee in that case was bound by a grievance resolution directing him to behave "in a professional and courteous manner" following prior acts of misconduct on his part. 738 A.2d at 520. Thus, the employer succeeded in establishing "existence" of a specific work rule, its "reasonableness," and "the fact of its violation" by the employee. *Id.* at 522. The burden then shifted to the employee "to prove that he had good cause for his action." *Id.* Since the employee failed to present evidence relevant to that point, we affirmed the Board's denial of UC benefits. *Id.*

In this case, by contrast, Mr. Soria acknowledged during the hearing before the Referee that Claimant's e-mail messages did not violate any workplace policies. Consequently, Employer still carries the burden to show that Claimant used language toward her superior that was abusive, vulgar, or offensive in order to prove willful

8

misconduct. As noted, Employer does not attempt to do so, and it is far from self-evident which words from the March 20, 2022 e-mail exchange meet that standard. It may be fully acknowledged that Claimant's domineering tone and use of capital letters and exclamation points to convey emphasis were ill-considered, particularly when directed toward a superior. While Employer may reasonably characterize such language as rude, that is obviously insufficient to meet the requisite standard.

Lastly, we reject Employer's contention that Claimant's e-mail messages signaled a refusal to follow her superior's orders. Ms. Soria's initial message from the afternoon of March 20, 2022 instructed Claimant to put off action on the sales lead until the next day, but Mr. Soria testified that Claimant was dismissed that morning upon her arrival. Thus, Claimant had no opportunity to act, or fail to act, on the orders given to her in that message. As the Board correctly observed, Claimant's actions were "not insubordinate," Board Op., Discussion, but were merely a candid expression of displeasure with Employer's pursuit of a course of action that Claimant believed was contrary to Employer's best interest.

## III. Conclusion

As acknowledged by the Board, Employer was within its rights to determine that Claimant's employment was no longer tenable following the tense e-mail exchange of March 20, 2022. However, Employer fails to establish why Claimant's language in that exchange, though perhaps impolitic, constitutes willful misconduct. We therefore affirm the Board's Order.

_____
MATTHEW S. WOLF, Judge

9

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Cowboy Logic, LLC d/b/a :
Home Instead Northampton, :
                Petitioner :
                 :
          v. : No. 151 C.D. 2024
                 :
Unemployment Compensation :
Board of Review, :
            Respondent :

# **O R D E R**

AND NOW, this 2nd day of April 2025, the Order of the Unemployment Compensation Board of Review in the above-captioned matter, dated January 25, 2024, is hereby AFFIRMED.

 

_____
MATTHEW S. WOLF, Judge